IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| LISA DAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-4051-CV-C-BP |
| | ) | |
| COLE COUNTY COMISSION, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

This case comes before the Court on Defendant Cole County Commission's Motion for Summary Judgment. (Doc. 19.) Cole County moves for summary judgment on each of Plaintiff Lisa Day's claims. Day alleges Cole County terminated her employment in violation of federal statutes and state tort law. Cole County argues Day's claims lack evidence, are barred by sovereign immunity, or have been pleaded against the wrong political entity. Cole County's motion will be granted.

**I.    Facts.**

These facts are undisputed and are properly received here. Fed. R. Civ. P. 56(c). Day suffers from heart trouble. In 2004, a doctor diagnosed Day with several heart conditions. These conditions flare up in hot environments, and they pose severe health risks.

In 2006, Day began working for the Cole County Prosecuting Attorney's Office as a legal assistant. Day assisted with legal enforcement of child support obligations by managing between 200 and 300 open cases. Day's supervising attorney was Holly Finch, and she knew of Day's heart problems at the time Day began working for the Office. Finch gave Day high marks during a January 2008 performance review.

Day's heart problems grew worse during her employment, and occasionally she was hospitalized or otherwise missed work. In particular, Day was hospitalized on approximately June 20, 2010. When Day returned to work a few days later, Finch recommended that she apply for leave under the Family and Medical Leave Act (FMLA), because she had used up almost all of her paid vacation and sick leave. Shortly thereafter, Day obtained an FMLA leave application form. (FMLA Form, Def.'s App'x at 1-4, Doc. 20-1.) This form requires that an employee's doctor provide certain information. On June 24, 2010, Day sent her doctor this form using the office fax machine.[1]

Prior to mid-2010, Finch had no major concerns with Day's work performance. However, in May or June of that year, Finch began hearing from her staff that Day was neither managing her case files nor returning phone calls. These comments reinforced Finch's own concerns, which arose from her review of Day's cases during court appearances. Thus, on July 5, Finch came into work on a holiday solely to conduct a comprehensive review of Day's case files. Finch's review turned up numerous deficiencies in Day's files. Finch prepared a six-page summary of these deficiencies and the corrective action they required. This summary lists a total of 71 deficiencies; some of these deficiencies were major, and some dated back up to six months. (July Summary, Def.'s App'x at 6-12.)

On July 6, Finch presented this summary to Cole County Prosecutor Mark Richardson. Richardson asked Finch to revise her summary, because he was unfamiliar with the abbreviations

---

[1] At times, Day contends she "applied" for FMLA leave on June 24, thereby implying she submitted her FMLA application to Cole County on this date. This characterization is inconsistent with the undisputed evidentiary record. The record shows that a Cole County employee applies for FMLA leave by first having his or her doctor complete the FMLA form, and then submitting that completed form to Cole County for approval. Consistent with this practice, the undisputed evidence shows Day faxed her FMLA form to her doctor on June 24. Then, after Day received the completed from her doctor on July 8, she submitted it to Cole County. As a result, Day could not have "applied" for FMLA leave on June 24.

and jargon she used in it.  On July 8, Finch had revised her summary and was prepared to return it to Richardson, when Day approached her.  Day had in hand a completed FMLA form, signed and dated July 8 by Day's doctor.  Cole County approved Day's FMLA leave application later in the day.  Finch testified it was on this date – July 8 – that she first became aware of Day's FMLA application.

Also on July 8, Finch presented the revised summary of deficiencies and an explanatory letter to Day.  (Letter dated July 8, 2010, Def.'s App'x at 5.)  Day acknowledged receiving the summary and letter, and she has admitted the deficiencies listed on the summary are valid.  Initially, Finch instructed Day that each deficiency must be corrected within 30 days.  However, Finch subsequently changed course, instead instructing Day to address the deficiencies as quickly as she could given her health conditions.

Day took intermittent FMLA leave throughout the remaining months of 2010.  Eventually, Day's doctor recommended that she have heart surgery on December 22, 2010.  Day underwent surgery on that date, causing her to be absent from work until January 14, 2011.

While Day was away, Finch noticed an error in one of Day's files as she was preparing for court.  As a result, Finch suspected Day still was not managing her case files.  Finch instructed her staff to review all of Day's files.  This review turned up numerous deficiencies, some of which dated back many months.  (Dec. Summary, Def.'s App'x 15-20.)  Based on these findings, Finch gave Day poor marks in a January 13 performance review.  Finch also recommended that Richardson terminate Day's employment.

Day returned to work on January 14.  Upon her return, Day found the January 13 negative performance review.  Day also received a letter from Richardson, stating he was considering terminating her employment.  (Letter dated Jan. 14, 2011, Def.'s App'x 21.)  On

3

January 18, Richardson held a "pre-termination hearing" with Day. During this hearing, Richardson asked Day why she was unable to complete her duties while she was at work. Richardson did not ask about what occurred while Day was on leave. Day responded that worrying about personal issues – including her marriage, her medical problems, and her mother's well-being – was interfering with her work performance. Day later supplemented her response in writing, in which she made similar statements.

Ultimately, Richardson concluded Day was not completing her duties while she was present at work. Richardson made this decision based on the pre-termination hearing, interviews with Day's co-workers, and Finch's response to Day's supplement. On February 4, Richardson terminated Day's employment.

Day filed this case against the Cole County Commission, alleging it unlawfully terminated her employment. Day's Complaint contains four counts. Count One alleges retaliation under the FMLA.[2] Count Two alleges both discrimination and failure to accommodate under the Americans with Disabilities Act (ADA). Count Three alleges intentional infliction of emotional distress. Count Four alleges negligent infliction of emotional distress. Cole County moves for summary judgment on each of these claims.

## II. Standard for Summary Judgment.

A party is entitled to summary judgment when the evidentiary record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(a); *Heacker v. Safeco Ins. Co. of Am.*, 676 F.3d 724, 726-27 (8th Cir. 2012). When a party moves for summary judgment, the court's role is to determine whether the

---

[2] Cole County interpreted Count One as also asserting an FMLA interference claim. In her briefing, Day makes clear she is not alleging this claim. (Pl.'s Opp. at 9, Doc. 23.) Thus, the Court finds this claim is not at issue in this case.

4

Case 2:12-cv-04051-BP   Document 26   Filed 03/22/13   Page 4 of 9

evidentiary record contains genuine issues of material fact. *Connolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006). The court makes this determination by viewing the facts and drawing all reasonable inferences in favor of the nonmoving party. *Heacker*, 676 F.3d at 726-27.

### III. Discussion.

Cole County's summary judgment motion contains two parts. First, Cole County argues each of Day's claims fails on its merits. Second, Cole County argues Day's claims also fail because she has not sued the proper political entity. The Court takes up each argument below.

#### a. FMLA retaliation

Count One alleges Cole County retaliated against Day for exercising her FMLA rights. *See* 29 U.S.C. § 2615(a)(2); *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008) (discussing cause of action). To prevail on this claim, Day must show Cole County's termination was "motivated by retaliatory intent." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 999 (8th Cir. 2011). Day has not presented any direct evidence Cole County terminated her in retaliation for taking FMLA leave. Thus, the Court analyzes Day's indirect evidence of retaliation under the familiar *McDonnell-Douglas* three-step burden-shifting framework. *Phillips*, 547 F.3d at 913.

Cole County argues Day's claim fails under this framework's third inquiry. Cole County contends there is no genuine issue its proffered reason for terminating Day – that she was not completing her duties while at work – was mere pretext for FMLA retaliation. *Wierman*, 638 F.3d at 999. To rebut this argument, Day must present "enough admissible evidence to raise genuine doubt as to the legitimacy of" Cole County's proffered reason. *Id.* at 995.

Day makes two major arguments that there are genuine issues of pretext. In the first, Day relies upon the timeline of events. However, Day's timeline contains an unsupported conclusion. Day contends Cole County should have known of her FMLA leave as of June 24, 2010, when

she used the office's fax machine to send her doctor the FMLA form. However, Day herself sent this fax, and there is no evidence she informed any Cole County employee of it. Day does not explain how merely sending this fax put Cole County on notice of her FMLA leave, and it is not reasonable to infer that it did. Thus, the undisputed record shows that Finch first learned of Day's FMLA form on July 8, when Day presented her completed form.[3]

After reviewing a proper timeline, the Court finds that Day's argument fails. Initially, Day's focuses on Finch's July 5 review of her case files. Day contends this review was retaliatory. But as established above, Finch did not learn of Day's FMLA application until July 8. This sequence negates any inference of retaliation. *Arraleh v. Cnty. of Ramsey*, 461 F.3d 967, 978 (8th Cir. 2006) (no evidence of pretext where employee's deficiencies were identified before employee asserted rights); *see Chivers v. Wal-Mart Stores, Inc.*, 641 F.3d 927, 933 (8th Cir. 2011) (no causation where employer's adverse actions occurred before employee's protected activity). Day also argues that by changing the deadline for each case file deficiency to be corrected, Finch gave Day no guidance about her duties. Thus, Day argues Finch set up the grounds for her eventual termination. The record does not support this conclusion. Instead, the record shows Finch revised this deadline in order to accommodate Day's medical issues. Day does not explain how this decision was retaliatory or is evidence of prextext.

Next, Day focuses on Finch's second review of Day's case files, her January 13 negative performance, and her recommendation that Day be terminated. Day contends these actions were retaliation for taking FMLA leave for her December 22 surgery. This argument is unavailing. The record shows that Finch reviewed Day's case files only after she found another error in them. Thus, Finch's legitimate reason for reviewing Day's case files (finding an error) coincides

---

[3] Day does not argue that Finch's mid-June suggestion that Day apply for FMLA leave was itself sufficient to give notice that Day sought FMLA leave.

6

with the allegedly pretextual motive (retaliating for taking FMLA leave). This temporal coincidence undermines any inference of pretext. *Id*. Moreover, the record shows Finch had been concerned with Day's work performance for many months. Finch's pre-existing concerns further undercut any inference of pretext. *Id.*[4]

In her second argument, Day contends she was singled out among her co-workers. Day notes that Finch reviewed only her case files on July 5. Thus, Day argues she was treated differently than her fellow legal assistants. However, to be similarly situated employees must be alike in all relevant respects, including by being accused of the same misconduct. *Id.* at 994. Here, the record shows Day was different from her co-workers in one crucial respect: only Day was accused of failing to manage her case files. Indeed, there is no evidence that any of the office's other legal assistants failed to complete their duties while at work. This distinguishes Day from those employees, so that they are not similarly situated. Thus, Finch's failure to also review their case files does not create a genuine issue of pretext.

As set forth above, Day has not presented any evidence that creates a genuine issue of the legitimacy of Cole County's proffered reason for termination. Thus, there is no genuine issue this reason was mere pretext. Cole County is entitled to summary judgment on Day's FMLA retaliation claim.

### b. ADA discrimination

Count Two alleges Cole County discriminated against Day for being disabled. *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 711 (8th Cir. 2003) (discussing cause of action).

---

[4] To the extent Day also argues that Finch's actions were retaliation for Day submitting her July 8 FMLA leave application, this argument fails. Approximately five months passed between Day's application and Finch's actions. This period is too long to create a genuine issue of pretext. *See Chivers*, 641 F.3d at 933 (temporal proximity between two events must be "close" to establish causation).

Day has presented no direct evidence of disability discrimination, and so the Court analyzes this claim under the *McDonnell Douglas* framework. *Epps v. City of Pine Lawn*, 353 F.3d 588, 591 (8th Cir. 2003). As with Day's FMLA claim, the parties focus on whether Cole County's proffered reason for terminating her employment was pretextual. Day contends there are genuine issues on this point, by making the same arguments discussed above. The Court rejects these arguments for the reasons previously given. Cole County is entitled to summary judgment on Day's ADA discrimination claim.

### c. **ADA failure to accommodate**

Count Two also alleges Cole County failed to accommodate Day's disability. In her briefing, Day concedes the record contains insufficient evidence of this claim and she voluntarily dismisses it. (Pl.'s Opp. at 9.) Accordingly, Cole County is entitled to summary judgment on Day's ADA failure to accommodate claim.

### d. **Infliction of emotional distress**

Count Three alleges intentional infliction of emotional distress, and Count Four alleges negligent infliction of emotional distress. Cole County argues these state law tort claims fail as a matter of law, because it is entitled to sovereign immunity. Mo. Rev. Stat. § 537.600.1. In her briefing, Day concedes Cole County is entitled to sovereign immunity and she voluntarily dismisses these claims. Accordingly, Cole County is entitled to summary judgment on Day's state law tort claims.

### e. **Failure to sue the proper political entity**

Finally, Cole County argues each of Day's claims fail for the additional reason that Day has not sued the proper political entity. Day pleaded her claims against the Cole County Commission. Cole County argues the Commission is not a juridical entity that can sue and be

8

Case 2:12-cv-04051-BP   Document 26   Filed 03/22/13   Page 8 of 9

sued. Thus, Cole County argues it is entitled to summary judgment. However, the Court has already found that Cole County is entitled to summary judgment on the merits of Day's claims. Therefore, the Court need not take up this issue.[5]

### IV.     Conclusion.

For the reasons set for above, Defendant Cole County Commission's Motion for Summary Judgment (Doc. 19) is **GRANTED**, and summary judgment is entered in its favor on all counts.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT

DATE:  March 22, 2013

---

[5] Even if the Court were to take up this issue and resolve it against Day, it is unlikely the Court would grant Cole County summary judgment, because that result would be unduly harsh. Instead, the Court would consider allowing Day to amend her Complaint. Fed. R. Civ. P. 15(a)(2). This course is more appropriate for the facts of this case, as there is no evidence that naming Cole County Commission as the defendant caused prejudice of any kind. *See* Fed. R. Civ. P. 15(c).